The HOUSING AND REDEVELOPMENT AUTHORITY OF the CITY OF FARGO, North Dakota, Plaintiff and Appellee,

v.

Viola GRAFF, Defendant and Appellant.

Civ. No. 10615.

Supreme Court of North Dakota.

July 18, 1984.

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellee; argued by Garylle B. Stewart, Fargo.

J. Bill Hansen, Fargo, for defendant and appellant; argued by J. Bill Hansen, Fargo.

SAND, Justice.

Viola Graff appealed from a judgment evicting her from the New Horizons Manor, a residential building in Fargo owned and operated by the Housing and Redevelopment Authority of Fargo (HRA).

The New Horizons Manor was built in 1972 to provide barrier-free housing for handicapped people with ambulatory disabilities. Because the Manor, upon opening, was not fully occupied, HRA admitted residents without physical disabilities.

Graff began leasing her current apartment in the Manor in April 1973 and, in October 1978, executed a second lease. She testified that she was initially admitted because she suffered from back ailments which enabled her to meet admission criteria.

In February 1983 HRA notified Graff that they intended to terminate her lease because she did not require handicapped housing. At this time HRA had a list of nine seriously handicapped persons waiting for apartments. HRA offered to relocate Graff in one of two similar housing projects operated by HRA in Fargo, but Graff refused. Graff subsequently requested and received a grievance hearing before the "Community Relations Council," a ten-member group including individuals from HRA, the community at large and HRA tenants. In March 1983 the Community Relations Council upheld HRA's decision to terminate Graff's lease, but HRA granted her an extension until 30 October 1983. When Graff failed to vacate the premises on 30 October, HRA instituted a forcible detainer action. The Cass County court granted judgment in favor of HRA and Graff appealed. The parties stipulated to a stay of the detainer order pending this appeal. The only issue is whether or not the trial court correctly interpreted the lease to conclude that Graff is not entitled to housing at the New Horizons Manor on the applicable law and the evidence presented.

■ Construction of a written agreement to determine its legal effect is a question of law that is fully reviewable on appeal. See *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894, 896 (N.D.1978).

The provisions in the lease pertaining to admission requirements are:

"The eligibility for initial and continued occupancy for residents of ... [New Horizons Manor] shall be determined by the Executive Director of Management. Disability as defined under the Social Security Act shall not constitute the only requirement for residency and continued residency at New Horizons Manor, but shall be considered by the Management. The medical forms and any reports submitted by Tenants, or as otherwise required by Management, shall be considered for initial occupancy and reexamination for eligibility. The Medical Review Committee shall determine whether a person is disabled or handicapped and the severity of such disability and will submit its determination to the Executive Director. The Executive Director will then determine eligibility under the guidelines and procedures for initial and continued occupancy as set forth in the Admission Policies Regulations adopted

by the Housing and Redevelopment Authority, which are incorporated herein by reference. A Tenant in this project shall not be terminated if he meets the minimum disability or handicap requirements."

The evidence produced at the proceedings before the Cass County Court in December 1983 indicates that Graff underwent back surgery in 1966 and 1968. She testified that she still suffers pain, that she cannot remain "in any position for any length of time," and that she cannot climb stairs or lift anything weighing more than five pounds.

Graff presented a letter from Dr. John Argabrite, a South Dakota medical doctor specializing in allergies which stated that she is allergic to many petrochemicals. Dr. Argabrite stated that Graff "uses her apartment as an oasis," and that her chemical sensitivity problem prevents her from engaging in "substantial gainful work activity." This letter was previously submitted to the Cass County Community Relations Council hearing in February 1983.

Graff worked for IBM until her retirement in January 1972. Since then she has been receiving Social Security disability insurance benefits. Last September an administrative law judge determined that she continues to be disabled.

■ The administrative law judge's determination that Graff is disabled under the Social Security Act, is sensitive to chemicals, and has back ailments, may be adequate to establish that she is "disabled," but that is not the end of the inquiry. Graff relied heavily upon the sentence in the lease which states that "A tenant ... shall not be terminated if he meets the minimum disability or handicapped requirements." We are not persuaded, however, that this quoted clause is dispositive of the issue because "particular clauses of a contract are subordinate to its general intent." NDCC § 9–07–15. The general intent of the lease to establish a preference for handicapped individuals is evidenced by the same paragraph of the lease which states that "Disability ... under the Social Security Act [does] not constitute the only requirement for residency and continued residency at New Horizons Manor ...."

■ The "Medical Admission Criteria" for New Horizons Manor state that the purpose of the Manor is to "provide barrier free housing for people who are physically handicapped from an orthopedic or neurological disorder." The criteria note that "Such individuals characteristically require wheelchairs, crutches, braces, prostheses or other assistive devices ...." In addition, the "Admission Policy Regulations" stating that "Handicapped persons will be given preference for units specifically built for the handicapped" further reflect the general intent of the lease. The Admission Policy Regulations also give first preference to the most severely handicapped.

Graff does not use a wheelchair, cane, crutches, walker or any other type of assistive device. Except for her inability to climb stairs, she is completely ambulatory and takes two-mile walks daily. She testified that she still drives her car, that she shops for produce "all around town" and that she is "always hauling things in and out [of her apartment] and using carts." Furthermore, counsel for Graff acknowledged during oral argument to this court that Graff did not need the handicapped devices present at New Horizons Manor. Asked if, except for the chemicals, she could do as well in another building with her back disability as she could in New Horizons, counsel for Graff responded that she could.

Dr. Ross Halliday, a medical doctor and chairman of the Medical Review Committee which screens applications and reviews tenants' qualifications for handicapped housing, testified at the December hearing that he had reviewed Dr. Argabrite's letter diagnosing Graff as allergic to certain chemicals but was unable to agree with its conclusions because it was "anecdotal in nature" and because Argabrite's analysis was not documented with laboratory work. Counsel for HRA introduced a letter from

Halliday to the Medical Advisory Committee requesting that Argabrite's diagnosis be verified "with specific allergy tests and by Board certified Allergists rather than someone whose practice is limited to allergy." Halliday testified that it was his understanding that Graff refused to have her own physician or anyone else evaluate her for allergy problems. Graff testified that she refused further allergy testing because of its high cost and "violent reactions." Asked if, in his medical opinion, Graff needed the facilities at New Horizons Manor for her allergies, even assuming Argabrite's diagnosis was correct, Halliday answered no. Halliday added that Graff's back ailments "would not have qualified her for New Horizons Manor. Never has and never will."

Graff claimed that the two other buildings in which HRA had offered to relocate her were "full of chemicals" largely because they were carpeted, which, she asserted, "is the worst thing when it comes to chemicals." She further claimed that she could not maintain carpeting because "vacuuming is the one thing that ... will wreck [her back]." Graff's concern, however, is rendered less significant in view of HRA's offer to remove all carpeting from a new apartment in one of the other buildings.

After reviewing the evidence, the lease, the Medical Admission Criteria, and the Admission Policy Regulations, and applying Rule 52(a), NDRCivP, we conclude that the trial court's findings of fact are not clearly erroneous. We further conclude that the trial court did not err in determining that, when admitted to the New Horizons Manor, Graff did not, nor does she now, meet its criteria "for a disabled or handicapped person."

We also take into account that Graff's admittance to the Manor was due to special availability existing at that time, and her status under the terms of the lease and the purposes of the Manor have not changed so as to entitle her to a possessory right in the premises.

Accordingly, the judgment of the trial court, in principle, is affirmed and the case is remanded for vacation of the stay order and the reinstatement of the judgment, but with a new date specifying when Graff must vacate the premises. Neither party is to receive or be assessed costs on appeal.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.